J-S56022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN CLAYBURNE | : | |
| | : | |
| Appellant | : | No. 3423 EDA 2019 |

Appeal from the PCRA Order Entered October 21, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0004125-2014.

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: APRIL 5, 2021**

John Clayburne appeals from the order denying his first timely petition

filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§

9541-46. We affirm.

This Court has previously summarized the pertinent facts as follows:

> Around midnight on March 8, 2013, Michael King ("King")
> also known as "Poogie" was killed by gunfire while driving a
> van near the Cobbs Creek Inn in the City and County of
> Philadelphia. Earlier that night, King had gone to the home
> of his friend Lamonte Butts ("Butts") also known as "Mont"
> and said he wanted to get high on pills. Butts told King that
> he did not feel like going out, but that King could take his
> minivan and go to make the purchase. King was gone for
> about an hour then returned to Butts saying that he could
> not find anyone from whom to purchase drugs. Butts joined
> King in the van to continue the search for drugs, and the
> pair ended up at the Cobbs Creek Inn located at Cobbs
> Creek Parkway and Catharine Street. Upon arrival at the

---

[*] Retired Senior Judge assigned to the Superior Court.

Inn, Butts went inside where he came into contact with Peter Hutton ("Hutton") also known as "Petey", who was known to him. Butts had $700-$800 on his person when he went into the bathroom with Hutton to discuss the exchange of drugs for cash. [Clayburne] also entered the bathroom. Hutton said that he could provide the drugs, but the drugs were [] at the home of his girlfriend. Butts and Hutton then left the Inn and walked toward the minivan where King was waiting in the driver's seat. As they approached the van, Butts noticed that they were being followed by a male wearing a hoodie who was later identified by Butts as [Clayburne]. Butts jumped into the front passenger seat of the van and Hutton entered the minivan through the sliding rear door. [Clayburne] approached Butts' door with a handgun drawn. Butts told King to drive off. As King began to drive, there were gunshots, one (1) of which struck King in the head and caused the van to crash into cars parked across the street from the Inn. . . . [Clayburne] came over to the crashed van and pointed the gun at Butts' head. Butts immediately threw the cash onto the ground and ran away.

Jumar Smith ("Smith") also known as "Gator Boots" or "Gator", who was at the door of the Inn at the time of the shooting, witnessed Butts and Hutton get into the van and saw a third person whom he did not recognize attempt to get into the minivan. Smith heard shots fired, saw the van crash, and watched Butts and Hutton run toward 63rd and Webster Streets. From his vantage point Smith observed the third male bend down to pick up cash from the ground then run toward 63rd Street and Cedar Avenue. Smith went into the Inn and called the police.

Dr. Edwin Lieberman of the Philadelphia Medical Examiner's Office performed the autopsy of King. The cause of death was determined to be one (1) gunshot wound to the head. The bullet entered near the left eyebrow and exited behind the left ear. The manner of death was found to be homicide. . . . [Clayburne] was apprehended by United States [Marshals] in North Carolina on April 22, 2013. . . . [Clayburne] did not have a valid license to carry a firearm.

Hutton made a statement to the police which he consented to have videotaped. In his statement, Hutton detailed events of the attempted drug sale and [r]obbery

- 2 -

which were consistent with the account of Butts. Hutton saw [Clayburne] fire two to three (2-3) shots. After giving his statement, Hutton failed [at] appear to six (6) court listings to testify for the Commonwealth in the instant matter. A bench warrant was issued, and once in custody for [c]ontempt of [c]ourt, Hutton refused to be sworn in to testify at two (2) subsequent listings, which caused the case to be dropped for lack of prosecution. A material witness petition was filed by the Commonwealth for Butts and Hutton and charges were once again brought against [Clayburne]. Hutton refused to testify at a ninth listing of this case and at trial, disavowed his statement and claimed the statement was the result of him being beaten up by Philadelphia police. A series of recorded phone calls between Hutton and various family members revealed that Hutton intended not to cooperate with the Commonwealth against [Clayburne], and evidenced that he and [Clayburne] had been in communication while both were in custody [in the same correctional facility].

*Commonwealth v. Clayburne*, 156 A.3d 353 (Pa. Super. 2016), unpublished memorandum at 1-3 (citation omitted).

On July 13, 2015, a jury found Clayburne guilty of first-degree murder, two counts of robbery, and carrying a firearm without a license. The Honorable Lillian Ransom sentenced him to the mandatory sentence of life imprisonment without the possibility of parole on the murder conviction. No further penalty was imposed on the remaining charges. Clayburne appealed this judgment of sentence. And this court affirmed on August 31, 2016. *Clayburne*, *supra*. Our Supreme Court denied Clayburne's petition for allowance of appeal on January 12, 2017. *Commonwealth v. Clayburne*, No. 427 EAL 2016.

On June 8, 2017, Clayburne filed a *pro se* PCRA petition. The PCRA court appointed counsel. On March February 16, 2018, PCRA counsel filed a "no-merit" letter and motion to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On October 16, 2018, current counsel entered her appearance, and, on February 19, 2019, filed a supplemental PCRA petition on Clayburne's behalf. On May 17, 2019, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Clayburne's petition without a hearing. Clayburne did not file a response. By order entered on October 21, 2019, the PCRA court denied Clayburne's PCRA petition. This timely appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Clayburne now raises the following five issues:

> **I.** Did the PCRA Court err in finding that [Clayburne's] after-discovered evidence claim alleging that homicide detectives involved in the taking of statements in this case acted consistent with a recently identified unconstitutional habit, pattern and practice lacked merit?
>
> **II.** Did the PCRA Court err in finding that [trial counsel] was not ineffective for failing to present available evidence in order to establish reasonable doubt?
>
> **III.** Did the PCRA Court err in finding that [trial counsel] was not ineffective for failing to move to suppress Dr. Lieberman's testimony and request that the [trial court] give the jury an 'incontrovertible fact' instruction?
>
> **IV.** Did the PCRA Court err in finding that [trial counsel] was not ineffective for failing to request that the [trial court] give the jury a corrupt and polluted source charge in reference to Hutton?

    **V.**     Did the PCRA Court err in finding that there was no cumulative impact of trial [counsel's] ineffectiveness in violation of the Sixth Amendment?

Clayburne's Brief at 3-4.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

In his first issue on appeal, Clayburne contends that the PCRA court erred in finding no merit to his claim that he was eligible for relief based on "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). To address this claim, we first note the test applied to after-discovered evidence under

the PCRA.  When discussing the test in the context of a PCRA appeal, our Supreme Court summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial.  As stated, the four-part test requires the petitioner to demonstrate the new evidence:  (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.  The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA.  In addition, we have held the proposed new evidence must be producible and admissible.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial.  *See*, *e.g.*, *Small*, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations).  We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted."  *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010).  "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction."  *Id.*

In his second, third, and fourth issues, Clayburne challenges the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Finally, in his fifth issue, Clayburne asserts that he is entitled to post-conviction relief based upon the cumulative impact of his various ineffectiveness claims. Our Supreme Court has held that "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Koehler*, 36 A.3d 121, 161 (Pa. 2012)

(citation omitted). "When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed." ***Id.***

The PCRA court has authored a thorough and well-reasoned opinion pursuant to Rule 1925(a). The Honorable Genece E. Brinkley has addressed Clayburne's after-discovered evidence claim and his ineffectiveness claims with proper citation to legal authorities and citation to the certified record. As we discern no legal errors in Judge Brinkley's analysis, and we find her factual findings and credibility determinations fully supported by our review of the record, we adopt Judge Brinkley's 1925(a) opinion as our own in affirming the order denying Clayburne post-conviction relief. ***See*** PCRA Court's Opinion, 6/17/20, at 3-7 (concluding that Clayburne did not establish his claim of after-discovered based on "unconstitutional habit, pattern and practice" within the Philadelphia Homicide unit, because he failed to prove a nexus between his own case and the officers' misconduct, and was unable to show that the evidence would not be used solely to impeach credibility); at 8-11 (rejecting as meritless Clayburne's claim that trial counsel was ineffective for failing to vigorously cross-examine Dr. Lieberman and call a police officer and/or other witness to contradict Dr. Lieberman's conclusions); at 11-13 (rejecting as meritless Clayburne's claim that trial counsel should have sought to suppress Dr. Lieberman's testimony and requested that the jury be given an "incontrovertible physical fact" based upon the location of blood splatters); at

13-14 (rejecting as meritless Clayburne's claim that trial counsel was ineffective for failing to request a "corrupt and polluted source" jury instruction regarding Hutton's testimony since there was no evidence Hutton was an accomplice in the murder); and at 14-15 (rejecting Clayburne's claim that cumulative prejudice warranted post-conviction relief).[1]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/5/21

---

[1] The parties are directed to attach Judge Brinkley's June 17, 2020 opinion to this memorandum in any future appeal.